UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JEFFREY MACK,

                              Plaintiff,

      - v -                                                 Civ. No. 9:04-CV-588
                                                                   (NAM/RFT)

P. GRIFFIN, Captain, Eastern Correctional Facility,

                              Defendant.
_____

**APPEARANCES:**                                                   **OF COUNSEL:**

JEFFREY MACK
Plaintiff, *Pro Se*
99-A-4574
Wyoming Correctional Facility
P.O. Box 501
Attica, NY 14011

HON. ELIOT SPITZER                                KELLY L. MUNKWITZ, ESQ.
Attorney General for the State of New York       Assistant Attorney General
Attorney for Defendant
The Capitol
Albany, NY 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

     *Pro se* Plaintiff Jeffrey Mack brings a civil action pursuant to 42 U.S.C. § 1983, alleging a violation of his right to freedom of religion and retaliation under the First Amendment. Dkt. No. 1, Compl. at § 6. Defendant Griffin brings this Motion for Summary Judgment. Dkt. No. 17. Plaintiff opposes the Motion. Dkt. No. 19. For the reasons to follow, it is recommended that the Motion for Summary Judgment be **granted**.

## I. FACTS[1]

The events at issue in this case occurred while Plaintiff was an inmate at the Eastern Correctional Facility ("Eastern") where Defendant Griffin is employed as a Captain. Dkt. No. 17, Def.'s 7.1 Statement at ¶¶ 1-3. Plaintiff is a Muslim and as such, is prohibited from shaving his beard due to his religious beliefs. *Id.* at ¶¶ 4 & 5. The beard need not be worn in any particular manner as long as the beard is not cut. *Id.* at ¶ 6.

On November 25, 2002, Plaintiff was granted a permit which would allow him to grow his beard in excess of one inch. *Id.* at ¶ 7. After receiving this permit, Plaintiff would style his beard utilizing rubber bands and did so on many occasions. *Id.* at ¶ 10. Defendant Griffin observed Plaintiff wearing his beard in an unauthorized manner and ordered him to remove the unauthorized devices. *Id.* at ¶ 11. Defendant Griffin advised Plaintiff that if the behavior continued, a misbehavior report would be issued. *Id.* at ¶ 13.

On December 12, 2003,[2] Plaintiff filed a grievance against Defendant Griffin stating that he was being threatened with confinement within the Special Housing Unit ("SHU") for how he wore his beard and was told not to tie or put rubber bands in his beard. *Id.* at ¶ 14; Dkt. No. 17, Kelly L. Munkwitz Decl., Ex. B, Grievance, dated Dec. 12, 2003; Dkt. No. 19, Pl.'s 7.1 Statement, Ex. A,

---

[1] Plaintiff's response to the Motion for Summary Judgment fails to comport with the requirements of the Local Rules for the Northern District of New York. Plaintiff submits a Memorandum of Law and attempts to submit a Statement of Material Facts. *See* N.D.N.Y.L.R. 7.1(a). Instead of filing a proper Statement of Material Facts in which the non-movant must "mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs," Plaintiff merely disagrees with some of Defendant's numbered paragraphs and fails to either admit or deny the remaining paragraphs. N.D.N.Y.L.R. 7.1(a)(3). Nevertheless, the Court will proceed to discern the facts from Defendant's Statement of Material Facts as well as the Exhibits attached to the Motion and will utilize Plaintiff's submission with Exhibits to the extent possible.

[2] Defendant's 7.1 Statement states that the grievance was filed on December 12, 2004, however, a copy of the grievance is submitted to the Court and the date reflected is that of December 12, 2003. Dkt. No. 17, Kelly L. Munkwitz Decl., Ex. B, Grievance, dated Dec. 12, 2003; Dkt. No. 19, Pl.'s 7.1 Statement, Ex. A, Grievance, dated Dec. 12, 2003.

Grievance, dated Dec. 12, 2003. The Inmate Grievance Resolution Committee ("IGRC") noted that the grievance should be "pass[ed] thru [sic] as untimely." Munkwitz Decl., Ex. B, IGRC Report, dated Dec. 17 and 29, 2003. Plaintiff appealed the decision to the Superintendent. *Id.*, Ex. B, IGRC Report, dated Dec. 29, 2003. On January 2, 2004, the Superintendent denied Plaintiff's grievance stating that although Plaintiff does have a permit for his beard, the permit does not allow for braiding or putting rubber bands in the beard. Def.'s 7.1 Statement at ¶ 15; Munkwitz Decl., Ex. B, Superintendent's Review, dated Jan. 2, 2004. Plaintiff then appealed to the Central Office Review Committee ("CORC"). Def.'s 7.1 Statement at ¶ 16; Munkwitz Decl., Ex. B, CORC Review, dated Feb. 11, 2004. On February 11, 2004, the CORC upheld the Superintendent's determination and further commented that no provision exists for an inmate to have braids in his beard, but an inmate may "use a facility approved hair fastening device to tie back his beard, similar to hair tied back in a ponytail." Def.'s 7.1 Statement at ¶ 16; Munkwitz Decl., Ex. B, CORC Review, dated Feb. 11, 2004.

Apparently, Plaintiff continued to use rubber bands in his beard. Def.'s 7.1 Statement at ¶ 16. On April 17, 2004, Defendant Griffin observed Plaintiff with an unauthorized fastener on his beard and ordered Plaintiff to remove the rubber band. *Id.* at ¶ 18; Patrick J. Griffin Decl., Ex. A, Misbehavior Report, dated Apr. 17, 2004. Defendant Griffin issued a second order after the first was ignored and Plaintiff began arguing and stating that Defendant Griffin was harassing him and denying him his religious freedom. Def.'s 7.1 Statement at ¶¶ 18 & 19; Griffin Decl., Ex. A, Misbehavior Report, dated Apr. 17, 2004. Due to Plaintiff's boisterous arguments, Defendant Griffin walked away from the incident and Sergeant Bradley escorted Plaintiff to his cell. Def.'s 7.1 Statement at ¶ 22; Griffin Decl., Ex. A, Misbehavior Report, dated Apr. 17, 2004. Based upon

Plaintiff's behavior, Defendant Griffin issued a misbehavior report on April 17, 2004, charging Plaintiff with failure to obey a direct order, interference, and conduct which disturbs the order of the facility.  Def.'s 7.1 Statement at ¶¶ 23 & 24; Griffin Decl., Ex. A, Misbehavior Report, dated Apr. 17, 2004.  A Tier III Hearing was held on May 11, 2004, and Plaintiff was found guilty of all three violations and Plaintiff was penalized with ninety days in SHU, loss of packages, commissary, and phones as well as a recommendation for six months loss of good-time credit.  Def.'s 7.1 Statement at ¶ 25; Munkwitz Decl., Ex. D, Hr'g Tr., dated May 11, 2004, at p. 41.

## II.  DISCUSSION

### A.  Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(c), summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," that there is no genuine issue of material fact.  *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party."  *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on "mere allegations or denials"

of the facts submitted by the moving party. FED. R. CIV. P. 56(e); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) and *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

### B. Exhaustion of Remedies

Defendant claims that Plaintiff has failed to exhaust his administrative remedies as "the grievance filed . . . against Captin Griffin is devoid of any suggestion that Captain Griffin threatened to discipline [P]laintiff if [P]laintiff did not shave his beard." Dkt. No. 17, Def.'s Mem. of Law at p. 8. Plaintiff fails to address this argument. *See* Dkt. No. 19, Pl.'s Mem. of Law at pp. 1-14.

The Prisoner Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997(e)(a), states that

"[n]o action shall be brought with respect to prison conditions under [section 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see also Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004).

The New York State Department of Corrections has created a three-step process to exhaust all administrative remedies available to inmates. *See Abney v. McGinnis*, 380 F.3d 663, 668 (2d Cir. 2004). First, the inmate must file a grievance complaint with the Grievance Clerk within fourteen (14) days of the incident. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.7(a)(1). The complaint is then submitted to the IGRC to review the grievance. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.7(a)(2)-(5). Second, if the inmate appeals the IGRC decision, then the inmate may appeal to the Superintendent. *See* N.Y. COMP. CODES R. & REGS. tit. 7, § 701.7(b). Third, if the inmate appeals the Superintendent's determination, the CORC is to make a final administrative determination. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.7(c). Upon the completion of all three steps, an inmate may "seek relief pursuant to 42 U.S.C. § 1983." *Colon v. Harvey*, 344 F. Supp. 2d 896, 897 (W.D.N.Y. 2004) (citing *Neal v. Goord* 267 F.3d 116, 122 (2d Cir. 2001) & *Santos v. Hauck*, 242 F. Supp. 2d 257, 259 (W.D.N.Y. 2003)).

Here, Plaintiff filed a grievance whereby he stated that Defendant Griffin threatened to put him in SHU because of the appearance of Plaintiff's beard. Munkwitz Decl., Ex. B, Grievance, dated Dec. 12, 2003; Pl.'s 7.1 Statement, Ex. A, Grievance, dated Dec. 12, 2003. Plaintiff also stated that Defendant Griffin expressed his displeasure at the manner in which Plaintiff wore his

beard and that the rubber bands should be removed. Munkwitz Decl., Ex. B, Grievance, dated Dec. 12, 2003; Pl.'s 7.1 Statement, Ex. A, Grievance, dated Dec. 12, 2003. Although it is unclear as to the reason Plaintiff's grievance passed through the IGRC as "untimely" and why the grievance was not addressed, Plaintiff nevertheless appealed to the Superintendent who denied Plaintiff's grievance on the merits. Munkwitz Decl., Ex. B, IGRC Report, dated Dec. 17 and 29, 2003 & Superintendent's Review, dated Jan. 2, 2004. Plaintiff then appealed to the CORC, thus fulfilling the exhaustion requirement in this respect regarding the appeals process. Munkwitz Decl., Ex. B, CORC Review, dated Feb. 11, 2004.

Defendant claims, however, that the grievance did not provide sufficient notice of Plaintiff's claim that Defendant "threatened to discipline [P]laintiff if [P]laintiff did not shave his beard." Def.'s Mem. of Law at pp. 7-8. The Second Circuit has stated that "if prison regulations do not prescribe any particular content for inmate grievances, 'a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought. As in a notice pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming.'" *Johnson v. Testman,* 380 F.3d 691, 697 (2d Cir. 2004) (quoting and adopting the reasoning in *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)). Thus, an inmate has to provide sufficient information regarding a defendant's conduct complained of in order to "allow prison officials to take appropriate responsive measures." *Id.* Under the Department of Correctional Services directives, "[i]n addition to the grievant's name, department identification number, housing unit, program assignment, etc., the grievance should contain a concise, specific description of the problem and the action requested and indicate what actions the grievant has taken to resolve the complaint, *i.e.,* specific persons/areas contacted and

responses received." N.Y. COMP. CODES R. & REGS. tit. 7, § 701.7(a)(1)(i).

In this case, Plaintiff did grieve the manner in which he could wear his beard, harassment by Defendant Griffin, threats that he would be placed in SHU, and he commented that his First Amendment rights to freedom of religion were being violated. Munkwitz Decl., Ex. B, Grievance, dated Dec. 12, 2003; Pl.'s 7.1 Statement, Ex. A, Grievance, dated Dec. 12, 2003. As noted above, Plaintiff's grievance shall contain "a concise, specific description of the problem." Plaintiff did not mention the threat of having his beard shaved, though he did mention the threats of SHU in conjunction with the shaving of his beard in his Complaint. Though Plaintiff did not mention the shaving, Defendant was well aware of Plaintiff's First Amendment claim regarding his religion. And, drawing all reasonable inferences in favor of Plaintiff, the Court finds Plaintiff's grievance gave Defendant Griffin sufficient notice of his claims and therefore deems the claims exhausted.

Therefore, it is recommended that the Motion for Summary Judgment on failure to exhaust be **denied**.[3]

### C. *Heck v. Humphrey* and *Edwards v. Balisok*

To the extent Plaintiff seeks to address his disciplinary Hearing, since the Complaint does not raise the issue even though Plaintiff's Memorandum of Law discusses the disciplinary Hearing, Plaintiff's action cannot stand as it is barred by *Heck v. Humphrey* and *Edwards v. Balisok*. *Compare* Compl. at § 6 *with* Pl.'s Mem. of Law at pp. 9-10.

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that to

> recover damages for an allegedly unconstitutional conviction or imprisonment, or for

---

[3] In making this recommendation, the Court notes its familiarity with *Woodford v. NGO*, 126 S. Ct. 2378 (2006), and finds that the Supreme Court's holding that the PLRA requires proper exhaustion has no bearing on our finding that Mack did indeed properly exhaust all available administrative remedies.

> any other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence had been reversed on direct appeal, expunged by executive order, declared invalid . . ., or called into question by a federal court's issuance of a writ of habeas corpus . . . .

*Heck,* at 486-87.

Thus, a court must consider if a judgment in favor of a plaintiff "would necessarily imply the validity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 487. If there is no implication, then the action should proceed. *Id.* In *Edwards v. Balisok*, 520 U.S. 641, 648 (1997), the Supreme Court extended *Heck* by holding that a prisoner who files a § 1983 action challenging discipline procedures resulting in loss of good-time credits must show that the conviction has been overturned.

Here, since the Tier III Hearing resulted in a recommendation for loss of good-time credits and Plaintiff has not provided any evidence that the results of the Hearing were reversed, expunged, or declared invalid, to the extent Plaintiff seeks to assert Fourteenth Amendment challenges to such Hearing, such claims would be barred.

### D.  First Amendment Claims

Although the Court recommends dismissal to any challenge of the Hearing, the Hearing also relates to Plaintiff's First Amendment claims. Nevertheless, even if the Court were to find in favor of Plaintiff on the First Amendment claims, it would not necessarily affect the validity of the sentence and therefore these claims will be addressed.

**1. Freedom of Religion[4]**

Plaintiff claims that his constitutional right of freedom of religion was violated when Defendant Griffin expressed to Plaintiff that he could not wear rubber bands in his beard and that one way to solve his problem was to shave his beard.  Compl. at § 6.

If a prisoner asserts a First Amendment violation based on a free exercise claim, a court must evaluate "1) whether the practice asserted is religious in the person's scheme of beliefs, and whether the belief is sincerely held; 2) whether the challenged practice of the prison officials infringes upon the religious belief; and 3) whether the challenged practice of the prison officials furthers some legitimate penological objective." *Orafan v. Goord*, 411 F. Supp. 2d 153, 161 (N.D.N.Y. 2006) (citing *Farid v. Smith*, 850 F.2d 917, 926 (2d Cir. 1988)).

In relation to the first prong, "the sincerity analysis is required to distinguish between those beliefs that are held as a matter of conscience and those that are animated by motives of deception and fraud." *Id.* (quoting *Patrick v. LeFevre*, 745 F. 2d 153, 157 (2d Cir. 1984) (internal quotation marks omitted)).  As for the second prong regarding infringement, it "may be analyzed similarly to the 'substantial burden' test under RLUIPA." *Id.* (citing *Ford v. McGinnis*, 352 F.3d 582, 591-92 (2d Cir. 2003)).  Finally, in evaluating the third prong, the Supreme Court has stated that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley,* 482 U.S. 78, 89 (1987); *see also Brown v. Johnson*, 2003 WL 360118, at *4 (W.D.N.Y. Feb. 14, 2003) (holding this standard is

---

[4] Plaintiff only brings a claim under the First Amendment and not under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.*  RLUIPA applies only to governmental action involving land use or institutionalized persons and the conduct alleged must be connected to federally funded activities, interstate commerce, or to individualized assessments.  *See* 42 U.S.C. §§ 2000cc(a)-(b) & 2000cc-1(a)-(b); *see also Young v. Goord*, 2005 WL 562756, at *5 (E.D.N.Y. Mar. 10, 2005).  A plaintiff may bring a religious freedom claim under either theory.

applied to claims brought directly under the First Amendment); *Verdal v. Frantz*, 2002 WL 31309175, at *2 (N.D.N.Y. July 31, 2002). The Supreme Court has set forth the following factors to consider in relation to the standard: 1) whether there is a valid and rational relationship between the prison regulation and the legitimate government interests asserted; 2) whether the inmates have alternative means to exercise the right; 3) the impact that accommodation of the right will have on the prison system and resources generally; and 4) whether ready alternatives exist which accommodate the right and satisfy the governmental interest. *Turner v. Safley,* 482 U.S. at 89-91 (citations omitted); *Orafan v. Goord*, 411 F. Supp. 2d at 161-62.

In this case, Plaintiff alleges his religious rights were infringed upon by Defendant Griffin when he was told the manner in which he could wear his beard and by the fact that Defendant may have stated a way to solve his problem was to shave his beard altogether. Defendant does not dispute Plaintiff's sincerely held beliefs in his religion as a Muslim. *See* Def.'s 7.1 Statement at ¶ 4; *Orafan v. Goord*, 411 F. Supp. 2d at 161. Defendant, however, suggests there has been no infringement of Plaintiff's constitutional rights to practice his religion.

Pursuant to N.Y. COMP. CODES R. & REGS. tit. 7, § 270.2(B)(11)(vi),

> [a]n inmate shall not grow a bear[d] or mustache over one inch in length unless: a. the inmate has a court order restraining the Department from enforcement; or b. the inmate has requested and received an exemption based upon his or her membership in a religion which has an established tenet against the trimming of beards, including, but not limited to, Rastafarian, Orthodox Judaism or Islam (Muslim).

Indeed, because of Plaintiff's Muslim faith, he received an exemption under this regulation in order to grow his beard past the one-inch limitation. Def.'s 7.1 Statement at ¶ 7; Munkwitz Decl., Ex. A, Pl.'s Dep. at p. 52, lines 14-16. In addition, when Plaintiff filed his grievance, the CORC noted that Plaintiff did have a permit but that he still needed to follow the rules of the facility and utilize the

authorized fastening devices provided by the facility, which was not the rubber bands Plaintiff placed in his beard. Def.'s 7.1 Statement at ¶ 16; Munkwitz Decl., Ex. B, CORC Review, dated Feb. 11, 2004.

Plaintiff readily admits that his religion does not proscribe the manner in which his beard must be worn, only that he should not trim, shave, or cut his beard or mustache. Munkwitz Decl., Ex. A, Pl.'s Dep. at pp. 14, lines 7-24, 16, lines 15-20, & 18, lines 16-19; Def.'s Mem. of Law at p. 9. The fact that the facility would place restrictions on the way Plaintiff, and presumably all the other inmates who claim this exemption, can wear his beard would not impinge on his right to actually wear the beard. Plaintiff was not made to shave his beard. Plaintiff's only conclusory allegation is that Defendant Griffin may have stated that shaving his beard would solve Plaintiff's problem. Drawing all inferences in favor of Plaintiff, this allegation would not constitute an infringement of his religious freedoms. *See Solomon v. Chin*, 1998 WL 473953, at *3 (S.D.N.Y. Aug. 10, 1998) (stating that summary judgment was appropriate where "the allegations in plaintiff's complaint were merely that defendants *threatened* to cut the dreadlocks on his head upon his arrival at Downstate" but that the plaintiff had "failed to put forth any evidence suggesting that the hair on his head was actually cut") (emphasis in original). Plaintiff was not forced in any way to actually shave the beard or even trim the beard. He was merely told that he should use a "Goody" hair fastener, as is used for ponytails. Def.'s 7.1 Statement at ¶ 9; Munkwitz Decl., Exs. B, CORC Review, dated Feb. 11, 2004 & D, Hr'g Tr. at pp. 6-7; Griffin Decl. at ¶ 6. The restriction on the type of band that may be placed in the beard in no way substantially burdens Plaintiff's religious rights, as all the religion calls for is for Plaintiff to not shave his beard. Therefore, summary judgment would be appropriate without the need to ascertain whether the challenged practice of the

prison officials furthers some legitimate penological objective as there is no infringement.[5]

As there has been no infringement, it is recommended that the Motion for Summary Judgment be **granted**.

## 2. Retaliation

Construing all ambiguities in Plaintiff's favor, Plaintiff seems to claim that as a result of submitting grievances and wearing his beard, Defendant Griffin retaliated against him by filing a misbehavior report. Compl. at § 6, Pl.'s Mem. of Law at p. 7.

The Second Circuit has stated that courts must approach prisoner retaliation claims "with skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official - even those otherwise not rising to the level of a constitutional violation - can be characterized as a constitutionally proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) & *Franco v. Kelly*, 854 F.2d 584, 590 (2d Cir. 1988)).

In order to prevail on a retaliation claim, a plaintiff bears the burden to prove, "first, that he engaged in constitutionally protected conduct and, second, that the conduct was a substantial or motivating factor for the adverse actions taken by prison officials." *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) (citations omitted). There must also be a "causal connection between the protected speech and the adverse action." *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004)

---

[5] In terms of whether the challenged practice of the prison officials furthers some legitimate penological objective, Defendant Griffin fails to address the issue. In this context, however, a court must "give[] proper deference to the decisions and judgment of prison officials, who are charged with the day-to-day operation of the prison." *Orafan v. Goord*, 411 F. Supp. 2d at at 162 (citing *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987)). Notwithstanding, since the Court finds there was no infringement, the Court need not address this third prong.

(citation omitted).

A plaintiff may meet the burden of proving an inappropriate retaliatory motive by presenting circumstantial evidence of a retaliatory motive, such as temporal proximity, thus obviating the need for direct evidence. *Bennett v. Goord*, 343 F.3d at 138-39 (holding that plaintiff met his burden in proving retaliatory motive by presenting circumstantial evidence relating to, *inter alia*, the temporal proximity of allegedly false misbehavior reports and the subsequent reversal of the disciplinary charges on appeal as unfounded). Other factors that can infer an improper or retaliatory motive include the inmate's prior good disciplinary record, vindication at a hearing on the matter, and statements by the defendant regarding his motive for disciplining plaintiff. *McEachin v. Selsky*, 2005 WL 2128851, at *5 (N.D.N.Y. Aug. 30, 2005) (citing *Colon v. Coughlin*, 58 F.3d 865, 872-73 (2d Cir. 1995)).

Moreover, "in the prison context [the Second Circuit has] previously defined 'adverse action' *objectively*, as retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.'" *Gill v. Pidlypchak*, 389 F.3d at 381 (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003)) (emphasis in original). This objective test will apply even though a particular plaintiff was not himself deterred. *Id.* If the plaintiff can carry that burden, the defendants will still be entitled to summary judgment if they can show, by a preponderance of the evidence, that they would have taken the same action in the absence of the prisoner's First Amendment activity. *Davidson v. Chestnut*, 193 F.3d 144, 148-49 (2d Cir. 1999); *see Hynes v. Squillace*, 143 F.3d 653, 657 (2d Cir. 1998); *Lowrance v. Achtyl*, 20 F.3d 529, 535 (2d Cir. 1994).

The Supreme Court has noted that the right to petition government for redress of grievances

is "among the most precious of the liberties safeguarded by the Bill of Rights." *See United Mine Workers of Am., Dist. 12 v. Illinois State Bar Ass'n*, 389 U.S. 217, 222 (1967). The Second Circuit has held that within the prison context, "inmates must be 'permit[ted] free and uninhibited access . . . to both *administrative and judicial* forums for the purpose of seeking redress of grievances against state officers.'" *Franco v. Kelly*, 854 F.2d at 589 (quoting *Haymes v. Montanye*, 547 F.2d 188, 191 (2d Cir. 1976)) (emphasis and alterations in original). In addition, prisoners do have a constitutional right to the free exercise of their religion, including the right to wear beards in the exercise of their religion, though this right is not absolute. *See Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003); *Orafan v. Goord*, 411 F. Supp. 2d at 161; *Ross v. Coughlin*, 669 F. Supp. 1235 (S.D.N.Y. 1987); *Phillips v. Coughlin*, 586 F. Supp. 1281, 1285 (S.D.N.Y. 1984) (stating that although "every inmate retains a First Amendment right to the free exercise of his religion, in the prison context that interest must be reconciled with the valid objectives of the corrections system").

In this case, Plaintiff filed his grievance on December 12, 2003, and the final disposition on the grievance was the CORC's determination on February 11, 2004. Munkwitz Decl., Ex. B, Grievance, dated Dec. 12, 2003 & CORC Review, dated Feb. 11, 2004. Drawing all reasonable inferences in favor of Plaintiff, we find that Plaintiff's claims that the filing of a grievance and the wearing of a beard, while protected conduct, must fail.

The misbehavior report was filed on April 17, 2004, approximately two months after the final stage in the grievance process and nearly four months since the filing of the grievance. Apart from Plaintiff's general allegation that he was threatened with SHU if he did not shave his beard, Plaintiff presents no evidence to support his allegations. The proximity of the misbehavior report to the CORC determination is not so close as to show a retaliatory motive. Although a misbehavior

report may be interpreted as an "adverse action," Plaintiff has not demonstrated a causal connection between the grievance and the misbehavior report despite the fact that both involved his beard. And since Plaintiff fails to show even a shred of circumstantial, let alone, direct evidence of a retaliatory motive or that the filing of the grievance was a substantial or motivating factor for the misbehavior report issued, Plaintiff cannot meet his burden. Plaintiff's general notion that freedom of religion is vital alone does not demonstrate the existence of a substantial or motivating factor. Pl.'s Mem. of Law at p. 8.

Furthermore, in regards to Plaintiff's claim that he was retaliated against because of his beard, as noted previously, Plaintiff was not told he could not wear a beard. *See supra* Part II.D. Rather, Plaintiff was informed by the CORC on February 11, 2004, that he could use a "facility approved" hair fastener instead of the other rubber bands Plaintiff utilized to tie his beard. *See* Munkwitz Decl., Ex. B, CORC Review, dated Feb. 11, 2004. Then on April 17, 2004, Defendant Griffin issued the misbehavior report, approximately two months after the CORC rendered its decision regarding Plaintiff's beard. Griffin Decl., Ex. A, Misbehavior Report, dated Apr. 17, 2004. Despite Plaintiff's right to wear the beard, which was not infringed upon, Plaintiff has not presented any direct evidence to show that the fact that he wore a beard was a substantial or motivating factor for the misbehavior report issued. Neither has Plaintiff provided any circumstantial evidence to show a retaliatory motive. The reason for the issuance of the report was not merely because of Plaintiff's use of unauthorized hair fasteners, but was also based upon Plaintiff's failure to follow a direct order, interference with an employee, and the creation of a disturbance to the order of the facility. *Id.* Moreover, the adverse action, the filing of the misbehavior report, would have occurred in any event due to Plaintiff's behavior, not because Plaintiff wore a beard. Def.'s Mem. of Law at

p. 13.

Therefore, it is recommended that the Motion for Summary Judgment be **granted**.

### III.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Motion for Summary Judgment (Dkt. No. 17) be **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

Date:   August 23, 2006
        Albany, New York

_____
RANDOLPH F. TREECE
United States Magistrate Judge